W. H. BARBER COMPANY *v.* HUGHES ET AL.

[No. 28,104. Filed November 9, 1945.]

572

*Robert C. Hardy,* of Chicago, Illinois, and *Roland Obenchain,* of South Bend, for appellant.

*Forrest E. Hughes* and *Charles E. Hughes,* both of Elkhart, and *W. McDowell,* of Winamac, for appellees.

RICHMAN, C. J.—The court below denied recovery sought by appellant against appellees Hughes on an Illinois judgment taken pursuant to a cognovit contained in a promissory note. Indiana statutory law, §§ 2-2904, 2-2905 and 2-2906, Burns' 1933, forbids the execution of such a power and refuses to recognize it as a waiver of process in a suit upon the note. Illinois has no such statute and there judgments by confession on cognovit notes are valid. Appellant relies upon the full faith and credit clause of the United States Constitution and appellees upon the Indiana statutes. The questions arise upon assignments of error in conclusions of law upon facts specially found. We have condensed and rearranged the findings, sometimes quoting, as follows:

Appellant is a Delaware corporation, licensed to do business in Illinois with its principal office and place of business in Chicago. Appellees Hughes are brothers and partners, residing in Indiana. Prior to 1935 they began to buy petroleum products from appellant and were its regular customers until the execution of the note in question. "A substantial part, if not all, of the deliveries of such products" by appellant occurred in Illinois. On September 30, 1940, appellees owed appellant more than $8,200.00 past due on an open account for petroleum products theretofore purchased,

all of which had been delivered in Illinois. On that date Royal Hughes conferred in Chicago with appellant "for the purpose of making a settlement of the account . . . but they arrived at no agreement of settlement." On October 3, 1940, he returned to Chicago "with the further view of making settlement of the Hughes' account," and in the conference that ensued, Wilbur Hughes not being present, appellant proposed that appellees:

> "immediately pay not less than $900.00 in cash on said account and that the balance remaining after such cash payment be settled and satisfied by a note in the principal sum of $7,310.81 payable to the order of plaintiff at its office in the State of Illinois bearing the signatures of the defendants Hughes payable in monthly installments and with final payment on June 15, 1941, with interest at five percent per annum. The defendant Royal W. Hughes approved said proposal of settlement and agreed that if the proposal was satisfactory to his brother, Wilbur F. Hughes, the defendants Hughes would give to the plaintiff their promissory note in the principal sum of $7,310.81 payable as follows: $810.81 on October 15, 1940; $500.00 on the 15th day of November and December respectively, 1940, and $500.00 on the 15th day of January, February, March, April and May respectively, 1941, and $3,000.00 on June 15, 1941, with interest at the rate of five percent."

The following day appellees "paid to plaintiff in cash $921.89 which was applied on said account." It does not appear how such cash was delivered. On the same day "in conformity with the proposition and agreement," above quoted, the note in question, without signatures, was mailed by appellant in Chicago to appellees in Indiana. It was received October 5, and on October 7 was signed by both partners in Indiana and mailed to appellant in Chicago, postage prepaid, where it was

received on October 8. The note is dated October 4, 1940, but the place of its signing does not appear thereon. It contains the ordinary promise to pay the principal sum, in installments, with interest and attorneys fees, followed by the cognovit running to "any attorney of any court of record," and finally the makers' signatures. Finding No. 15 states that:

"Upon receipt of said note set out in finding number twelve and after ascertaining that said note was satisfactory in form, that it had been signed by both the defendants Hughes and contained provision for confession of judgment and was payable in Illinois with final payment on June 15, 1941, the plaintiff accepted said note and gave value therefor by applying the same to the payment and satisfaction of the then balance of the open account owing the plaintiff by the defendants Hughes."

Thereafter payments were made, reducing the principal to $3,000.00, due June 15, 1941, when the note was transferred by assignment to appellee Central West Oil Corporation. On September 17, 1943, the unpaid principal was $1,900.00, on which date the holder took judgment by confession, solely pursuant to the cognovit, in the Municipal Court of the City of Chicago, which is a court of record of general jurisdiction. The judgment was thereafter assigned by appellee Central West Oil Corporation to appellant and is wholly unpaid.

The court finds as a fact that the law of Illinois permits the execution of this form of obligation, suffers judgment to be taken thereon without summons and the only difference between such a judgment and one in a suit brought by summons is that the waiver of summons, pursuant to the power given in the cognovit, is recognized as rendering further process unnecessary. It is further found that:

"In 1934 and subsequent years, the plaintiff and the defendants, Hughes, mutually intended that their contractual relations and all matters incident thereto be governed and controlled by the laws of the State of Illinois."

The statutes relied upon by appellees are aimed at the cognovit, not the promise to pay. They provide that

. "It shall be unlawful to execute or procure to be executed as a part of or in connection with the execution of any negotiable instrument . . . , and before a cause of action thereon shall have accrued, any contract, agreement, provision or stipulation giving to any person . . . a power of attorney or authority as attorney for the maker . . . , in his name to appear in any court of record, and waive the service of process . . . to confess judgment on such instrument . . . . Any and all (such) contracts . . . shall be void." § 2-2904, *supra*.

The following section provides in substance that no court of this state shall "aid or enforce the collection of any judgment which may be rendered upon any judgment taken in any other state" founded on such a cognovit. The other section, § 2-2906, makes it a misdemeanor, punishable by fine up to $500.00 and imprisonment up to six months, to procure or conspire to procure, such a cognovit or to attempt within this state to recover upon any judgment obtained elsewhere "based upon any such instrument."

The note in question was negotiable under the laws of both Illinois and Indiana, each of which has adopted . the Uniform Negotiable Instruments Law. The cognovit provision did not destroy its negotiability. § 19-105, Burns' 1933. Delivery "for the purpose of giving effect thereto" was necessary to make it a completed contract. § 19-116, Burns' 1933. Nor was it complete without the giving of value, which

means "any consideration sufficient to support a simple contract." § 19-202, Burns' 1933.

We have held that after the execution of such a note the cognovit paragraph may be stricken out by the payee without destroying his right to judgment ▮▮▮ on the note in an action in this state begun by summons. *Paulausky* v. *Polish Roman Catholic Union* (1942), 219 Ind. 441, 39 N. E. (2d) 440. But this does not mean that the cognovit is separable for all purposes. Nor do the two parts of the one instrument necessarily become effective at the same time. The effective date of the cognovit may not precede that of the promise to pay, for a valid power to confess presupposes an obligation to confess. But the consent of the attorney, which gives life to the power, may occur after the promise to pay has become obligatory and even has been breached. This seems to be true under general principles of agency, which require the consent of the agent to give effect to his appointment. *Department of Treasury* v. *Ice Service, Inc.* (1942), 220 Ind. 64, 41 N. E. (2d) 201; *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941), 110 Ind. App. 1, 34 N. E. (2d) 190, 37 N. E. (2d) 5; *Central Trust Co.* v. *Bridges* (1893), CCA 6th, 57 F. 753; *In re Fitzpatrick's Estate* (1940), 17 N. Y. S. (2d) 280; *Bertrand* v. *Mutual Motor Co.* (1931), Tex. Civ. App., 38 S. W. (2d) 417; Restatement of Law of Agency, §§ 1-a and 15; 2 Am. Jur. *Agency*, § 21.

The case of *Egley* v. *T. B. Bennett & Co.* (1924), 196 Ind. 50, 145 N. E. 830, 40 A. L. R. 436, superseding 139 N. E. 385 and 144 N. E. 533, was the subject of much comment in the law magazines. Its holding, and the dictum hereinafter referred to, may be harmonized with the case at bar on the theory that the cognovit became

an Illinois contract by assent of the attorney evidenced by his exercise of the power in Illinois. Commenting upon the case in 19 Ill. L. Rev. 584, Dean Gavit said:

> "There would certainly seem to be no objection to a citizen of Indiana appointing an agent in Illinois to do an act which the law of Illinois sanctions. Had the defendant executed the note in Ilinois the judgment would have been valid; had he employed an Illinois attorney to act for him in confessing judgment in Illinois the judgment would have been valid. It seems, therefore, no proper concern of the state of Indiana that the preliminary step was taken in Indiana. The appointment was contingent upon an event to happen in Illinois and the act authorized was to be performed in Illinois."

An unsigned note in 38 Harv. L. Rev. 110, which assumes that the cognovit note in the Egley case was *void* in Indiana, reads in part:

> "The question of the existence of an agency in Illinois is one of fact. Morever, the authorization to confess judgment did not create any rights to be governed by the law of Indiana. The authority depended upon the will of the maker, not upon the law. See BEALE, SUMMARY OF THE CONFLICT OF LAWS, § 92. The law of Indiana, which would govern contracts made in that state, has thus no effect upon the validity of the Illinois agency. See *Milliken* v. *Pratt,* 125 Mass. 374; *Baum* v. *Birchall,* 150 Pa. St. 164, 24 Atl. 620. See BEALE, *op. cit.,* § 92. Whether the act of the agent was effective in Illinois, to bind the maker and to render valid the judgment given, is a question of Illinois law. *Chatenay* v. *Brazilian Telegraph Co.* (1891), 1 Q. B. 79. And as Illinois calls the judgment valid, Indiana and every other state should give it full faith and credit. *Fauntleroy* v. *Lum,* 210 U. S. 230."

Both of these notes were written before the final opinion, but later with all three opinions under consideration an unnamed writer in 23 Mich. L. Rev. 908, said:

"But the power was not granted to the payee of the note nor did the defendant enter any contract with the attorney who confessed judgment. The extension of authority was general and an agency relation arose for the first time when the power was exercised. As an agency relation, the effect of the action would be determined by the law of the place in which the act occurred. 38 Harv. L. Rev. 110. Various constructions have been applied to a power of this kind. Some look to the law of the place where the note is payable and judge the validity of the power by it on the theory that such was the intention of the parties. *Vennum* v. *Mertens,* 119 Mo. App. 461. The Michigan court considered the power as a separate contract subject to the laws of the place where created. *Acme Food Co.* v. *Kirsch,* 166 Mich. 433. But see 38 L. R. A. (N. S.) 814. The Pennsylvania court considered it a matter of procedure but weakened their decision by applying the law of the forum to the whole contract. *Krantz* v. *Kazenstein,* 22 Pa. Sup. Ct. 275. However, other courts have held that such a power is a matter of remedy and procedure only. *Shelmerdine* v. *Lippincott,* 69 N. J. L. 82; *Hamilton* v. *Schoenberger,* 47 Ia. 385. Whether the law of Illinois is applied because this is a matter of performance, an agency, or a matter of remedy and procedure, the result in the instant case is sound. Each of these theories is sufficient to give Illinois jurisdiction and make the power to confess judgment valid. The effect of the power was only to modify and dispense with the formal steps that are normally required before a judgment of this kind can be rendered. It constituted a voluntary waiver of the necessity for personal service and became effective when acted upon. Consent being thus given to the Illinois court, in a manner recognized as valid under its laws, the judgment rendered pursuant thereto was entitled to full faith and credit, everywhere and was properly recognized and enforced in Indiana. 3 L. R. A. (N. S.) 449."

The several rules above referred to thought by the courts to make the law of a particular state applicable,

that is, place of performance, place of execution, intention of the parties, etc., are all grounded upon an assumed intention of the parties. It would here seem unnecessary to assume an intention when the trial court has found their actual intention that the whole transaction should be governed by Illinois law. If any of the rules had been consistently applied in this and other states to situations such as confronts us, we might be content to follow the precedents. But there is no such consistency.

The two Indiana cases most discussed in the briefs herein are *Egley* v. *T. B. Bennett & Co., supra,* and *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 74 N. E. 523, 69 L. R. A. 870, 108 Am. St. 324. In the former the Appellate Court and all the judges of the Supreme Court assumed that the note was executed in Indiana. But its law was not applied. The court finally decided that the validity of the cognovit was controlled by the law of the state of performance. Judge Gause added a *dictum,* upon which appellees herein place reliance, to the effect that if Indiana had then had a statute for-bidding under penalty the execution of a cognovit the majority might have reached a different conclusion.

In *Garrigue* v. *Kellar, supra,* the makers of a note, living in Chicago, sought a loan from an Indiana bank. The husband as principal and the wife as surety signed the note in Chicago and mailed it to Indiana where, upon its receipt, a draft for the loan was returned by mail to Chicago. The note being unpaid, the bank prepared three renewal notes covering the obligation, sent them by mail to Garrigue in Chicago, who modified them to make them read "on or before" the due date fixed by the bank, whereupon both husband and wife signed them in Chicago and mailed them to the bank. Upon receipt thereof in Indiana the bank returned the

old note by mail to Garrigue in Chicago. The jury found that the last signing and mailing in Chicago was done in pursuance of an agreement to that effect between Garrigue and the bank. The suretyship obligation was valid under Illinois law, void under Indiana law. In an attachment proceeding in Indiana, where Mrs. Garrigue owned property, there was a judgment in favor of the bank for the sale of the attached real estate. This judgment was affirmed. The court concluded that the notes were executed in Illinois and valid where executed. The fact that they were payable in Indiana, the court said, would not be accepted as conclusive evidence of an "intention by the parties that their validity should be governed by the laws of Indiana, when such an interpretation would render them wholly void as to one of the makers." It was contended that the notes were not delivered in Illinois, but the court said the antecedent agreement that they were to be mailed made their deposit in the mail, postage prepaid, a complete delivery in Chicago.

In view of the contrariety of opinion and assuming that the two parts of the instrument before us, the cognovit and the promise to pay, became effective at the same time and place, it is pertinent to inquire when and where was that time and place. If the place of execution and the place of performance and the place whose law was intended by the parties to control were one and the same, there is no problem.

A contract "is deemed to have been made in the state where the last act necessary to make it a binding agreement takes place." Goodrich on Conflict of Laws, 2nd ed., § 104, p. 262. *Travelers Insurance Co.* v. *Eviston* (1941), 110 Ind. App. 143, 37 N. E. (2d) 310, where the rule is stated in substantially the same language and is applied to an in-

surance contract. In the leading case of *Milliken* v. *Pratt* (1878), 125 Mass. 374, 28 Am. Rep. 241, it was said:

"If the contract is completed in another state, it makes no difference in principle whether the citizen of this state goes in person, or sends an agent, or writes a letter, across the boundary line between the two States. As was said by LORD LYND-HURST, 'If I, residing in England, send down my agent to Scotland, and he makes contracts for me there, it is the same as if I myself went there and made them.' *Pattison* v. *Mills*, 1 Dow & Cl. 342, 363. So if a person, residing in this State, signs and transmits, either by a messenger or through the post-office, to a person in another State, a written contract, which requires no special forms or solemnities in its execution, and no signature of the person to whom it is addressed, and is assented to and acted on by him there, the contract is made there, just as if the writer personally took the executed contract into the other State, or wrote and signed it there; and it is no objection to the maintenance of an action thereon here, that such a contract is prohibited by the law of this Commonwealth. *M'Intyre* v. *Parks*, above cited."

As to promissory notes the rule is stated by Professor Beale:

". . . the place of contracting of a contract on a negotiable instrument, be it the obligation of the maker, the drawer, or the endorser, is the place where, after the signature of the party in question, the instrument is first delivered for value." 2 Beale, Conflict of Laws, p. 1048.

The Supreme Court of Michigan in *State of Ohio* v. *Eubank* (1940), 295 Mich. 230, 294 N. W. 166, quoting Beale, emphasizes the importance of value, which, as declared in the Uniform Negotiable Instruments Law, § 19-202, Burns' 1933, signifies consideration. No Indiana cases have been found stating the rule as de-

clared by Professor Beale but it was recognized in *Meeker v. Shanks* (1887), 112 Ind. 207, 13 N. E. 712, wherein it was contended as a defense to a suit on a note that it had not been delivered to the person named therein as payee. This the court held unnecessary, saying:

> "Thus, in *Rhyan* v. *Dunnigan*, 76 Ind. 178, the defendants made their note payable to one Humble, to whom it was presented by one of the makers. Humble refused to accept it, and the note was afterwards delivered, with the consent of all the makers, to Dunnigan, who advanced money on it; held, that in legal effect the transaction constituted the paper a promissory note, payable to Dunnigan by the name of Humble. While the note in suit remained in the hands of Meeker it had no legal existence as a promissory note. *As soon, however, as Mason advanced the money upon it, and took it as evidence of the debt, the note took its inception, and became operative as a valid security for a loan of money.*" (Our italics.)

The necessity of consideration to create a liability upon a note is shown by cases like *Abelman* v. *Haehnel* (1914), 57 Ind. App. 15, 103 N. E. 869, and *Zehner, Trustee* v. *Zehner's Estate* (1920), 74 Ind. App. 334, 129 N. E. 244, wherein it was held that a negotiable instrument intended as a gift is unenforceable between the maker and payee. See also 5 U. L. A., *Negotiable Instruments*, Part 1, § 28, p. 342.

In discussing the steps essential to execution of a promissory note the Indiana cases frequently refer only to signing and delivery. One early case, *Prather* v. *Zulauf* (1871), 38 Ind. 155, contains an express statement that "the delivery of a note is the final act of execution," citing as authority *Ketcham* v. *New Albany etc. R. R. Co.* (1856), 7 Ind. 391. But neither of these cases held more than that a note not delivered is not an

executed note, which is quite a different matter. There was no question as to consideration or giving of value. This is true of all the cases we have examined wherein execution was said to include signing and delivery. They do not exclude the requirement of value mentioned by Professor Beale. In the case at bar the trial judge evidently deemed this material or he would not have made Finding No. 15, quoted *supra*. While it does not state that value was *first* given in Chicago, it bears that implication, for there is no finding that there was any other consideration than the one so mentioned.

In *Egley* v. *T. B. Bennett & Co.*, *supra*, there was no issue as to consideration or the place where it was first given. Having decided that the law of the state of performance was applicable, the court evidently thought the place of execution was unimportant. Perhaps the appellee Bennett Co., relying upon the rule that finally prevailed, was so confident of its position that it did not furnish the court with evidence as to the place of giving value.

But in *Garrigue* v. *Keller*, *supra*, with the fact established that value was first given in Indiana when the bank accepted the renewal note in discharge of the prior obligation, the court chose to base its decision on the law of Illinois and applied to the note a rule applicable only to offer and acceptance to reach the conclusion that it was executed in Illinois. There is basis for the argument that even this rule was misapplied, for the alleged offer—the unsigned note mailed in Indiana—was not unconditionally accepted. On the contrary it was changed before signing to make a different obligation than that originally intended and therefore constituted a counter-offer made by mail and accepted in Indiana when there received. The case is in direct conflict with *State of Ohio* v. *Eubank*, *supra*, and the cases cited

therein, particularly *Palmer Nat. Bank* v. *Van Doren* (1932), 260 Mich. 310, 244 N. W. 485, which holds that the place of execution of a renewal note is the place where it is accepted and the prior obligation cancelled. This accords with another intention of the parties, perhaps not actual, but so reasonable that it should be given effect by a court, that both obligations may not co-exist and therefore the new should take effect only when the old is discharged. See for an elaboration of this view, 2 Beale, Conflict of Laws, § 1313.1 at p. 1051.

Applying this principle to the facts before us, it seems obvious that where the purpose of the parties was to make a "settlement" of the account it could not have been their intention that the new obligation should take effect until the old was discharged. The open account was not settled in Indiana, but in Illinois, where, as the court expressly found in Finding No. 15, "the plaintiff accepted said note and gave value therefor by applying the same to the payment and satisfaction of the then balance of the open account . . ." While the trial judge in one of his conclusions of law expressed the belief, by way of recital, that the note was executed in Indiana, we do not share that belief. The findings compel the conclusion that the account was to be closed and satisfied by acceptance of the note in Illinois, which thus became the place of execution. This accords with the theory of the Negotiable Instrument Law that there is more to delivery than parting with possession. The delivery must be "for the purpose of giving effect" to the instrument. That purpose under the facts found herein would not be satisfied by the mere mailing in Indiana. See also *Navajo County Bank* v. *Dolson* (1912), 163 Cal. 485, 126 P. 153.

In view of the unsatisfactory state of the decisions, both in Indiana and other jurisdictions, and as a test

of the correctness of our conclusion that the validity of the note and its cognovit clause must be determined by the law of Illinois, we resort to a method used by modern teachers of Conflict of Laws in rationalizing the results obtained by the courts in decided cases. So far as we know it has not been formulated by any court into a rule, but if one were attempted it might be stated as follows: The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact. Two casebooks in common use in the law schools are Cases on Conflict of Laws—Cheatham Dowling Goodrich Griswold (2nd ed.) (1941) and cases on Conflict of Laws—Harper and Taintor (1937). The former is the result of collaboration of one Harvard and two Columbia professors and Judge, formerly Dean, Goodrich of Pennsylvania. The other book was prepared by Professor Harper of Indiana and Professor Taintor of Nebraska. In the former are several references to this method. See pages 478, 511 and 411. In the latter the subject is elaborated in an introductory statement to § 6 at pp. 173 and 175, as follows:

"Many courts purport to find the most significant contact point, with respect to contractual transactions, at the place intended by both parties. It seems, rather, that these courts examine all the circumstances which could be supposed to have influenced the actions of the parties, and find the most intimate contact at that place which might be characterized as the center of gravity of the circumstances.

"There is evident benefit in taking this accumulation of contact points as paramount, since then many difficult questions with respect to the identification of the place of contracting or the place of

performance will be avoided; and, furthermore, this result harmonizes with a sense of appropriateness: that is to say, it is appropriate that a transaction be governed by the law of the state with which it is most closely in contact, not because of the quasi-localization of a legal concept—place of contracting, place of performance, intention of the parties—but because of the closeness of factual contacts between that state and the significant acts of the parties."

Following this introductory note the authors have gathered cases, which upon examination disclose that the several courts, without consciously following a rule such as we have attempted to formulate, have considered and appraised the contact points and in the several decisions applied the law of the state with which the transation was found to be the most closely associated.

Looking for the contact points in the present case, we observe first that the parties were at all times engaged in purely business transactions. They transacted this business almost exclusively in Illinois. The accumulated indebtedness on September 30, 1940, arose solely from Illinois transactions. The place of their conferences to arrive at a settlement was in Illinois. The note was payable in Illinois. It was on an Illinois form. It was prepared in Illinois. It was valid in that state and was there to be performed. It was actually intended that Illinois law control, as expressly found by the court. On the other hand the only contact points with Indiana were the residence of the debtors, their signing of the note in Indiana and their placing it in the mail in Indiana. Considering all these circumstances it is impossible to escape the conclusions that the transaction centered in the State of Illinois and that its law should be applied to the note and the judgment taken thereon in the Municipal Court of Chicago.

It is settled that §§ 2-2904, 5 and 6, Burns' 1933, apply only to cognovit notes executed in Indiana, *Am. F. Mart B. Corp.* v. *W. C. Redmond, Sons & Co.* (1936), 210 Ind. 112, 1 N. E. (2d) 606, and can have no extra-territorial effect, *Hartford, Ind. Co.* v. *Delta Co.* (1934), 292 U. S. 143, 78 L. Ed. 1178, 54 S. Ct. 634, 92 A. L. R. 928. It is clear also that under Illinois law the judgment there taken was valid and accordingly must be given full faith and credit in Indiana. *Fauntleroy* v. *Lum* (1908), 210 U. S. 230, 52 L. Ed. 1039, 28 S. Ct. 641; *Roche* v. *McDonald* (1928), 275 U. S. 449, 72 L. Ed. 365, 48 S. Ct. 142, 53 A. L. R. 1141; *Titus* v. *Wallick* (1939), 306 U. S. 282, 83 L. Ed. 653, 59 S. Ct. 557; *Magnolia Petroleum Company* v. *Hunt* (1943), 320 U. S. 430, 88 L. Ed. 149, 64 S. Ct. 208. The facts in the case of *Fauntleroy* v. *Lum, supra,* are in substance like those in the case at bar. There the state of Mississippi was required to recognize a judgment of Missouri growing out of a gambling transaction in Mississippi made penal by its laws.

The conclusion which we have reached is supported by decisions of other states, among which are *Hastings* v. *Bushong* (1923), Tex. Civ. App., 252 S. W. 246; *Cook's Estate* v. *Brown* (1940), 346 Mo. 281, 140 S. W. (2d) 42; *Carroll* v. *Gore* (1932), 106 Fla. 582, 143 So. 633, 89 A. L. R. 1495; *Wedding* v. *First Nat. Bank, Inc., of Chicago* (1939), 280 Ky. 610, 133 S. W. (2d) 931; *Ohio Bureau of Credits* v. *Stineberg* (1940), 29 Ala. App. 515, 199 So. 246 (Cert. denied, 240 Ala. 357, 199 So. 252.)

In the Wedding case a cognovit note was signed in Kentucky by Wedding, sent to one of several sureties, Brown, who in Illinois delivered it to the payee for value, making of it an Illinois contract. The Kentucky statute was like our own. In a suit upon the judgment

taken·in Illinois pursuant to the cognovit provision, the Kentucky court laid stress, not upon the place of execution, but the place of performance, and held that the judgment was entitled to full faith and credit in Kentucky. The court said:

> "The great weight of authority holds that judgments obtained by confession under a warrant of attorney where the place of performance of the contract is in the state wherein judgment is rendered in conformity with the procedure of its courts, will be given full faith and credit even in states where such procedure is frowned on. . . .
>
> "The fact that Kentucky statutes forbid such contracts should not prevent us from giving full faith and credit to an Illinois judgment where the parties intended their transaction should be governed by the Illinois law. The objectionable part of this contract relates to court procedure which defines the route to travel in reducing this note to judgment. It is well recognized that court procedure differs widely in the many states of the Union, and· chaos would follow if the courts of one state would refuse to give full faith and credit to the· judgments of the courts of a sister state merely because of a difference in procedure. However much we may dislike the procedure by which this Illinois judgment was obtained, it is in conformity with the law of the forum rendering it, and the fact that Kentucky by statute forbids such procedure is no· reason to hold the judgment is inimical to our public policy."

Appellees stressed·in the oral argument, as controlling upon.us, *Monarch Refrigerating Co.* v. *Faulk* (1934), 228 Ala. 554, 155 So. 74. It was cited along with *Acme Food·Co.* v. *Kirsch* (1911), 166 Mich. 433, 131 N. W. 1123, and *Gloeckler Co.* v. *Baker Co.* (1932), Tex. Civ. App., 52 S. W. (2d) 912. All three are based upon the fact that the note was found or assumed to be executed in the state whose statute made void the cognovit pro-

vision. The Alabama Supreme Court took the view that the cognovit was void where executed, therefore void where the attorney exercised the authority, and concluded that the judgment was void for lack of jurisdiction. Not until we have before us an Indiana contract need we decide whether this view is sound. Suggesting the contrary is a note in 34 Yale L. J. 886. In the case at bar we have concluded that the note was an Illinois contract, which not only distinguishes the three cases last above cited but takes away any remaining force of the dictum by Judge Gause in *Egley* v. *T. B. Bennett & Co., supra.* This is made clear in a later Alabama case, decided by its Court of Appeals, *Ohio Bureau of Credits* v. *Stineberg, supra,* wherein with facts like those in the case at bar the court said:

> "It is necessary and essential to bear in mind that in declaring the above construction of our Statute, our Supreme Court was speaking with reference to a void warrant of attorney and with reference to a void judgment, to which Art. IV, sec. 1, of the Constitution of the United States did not require the State of Alabama to give full faith and credit, for in this is the distinction between the case of *Monarch Refrigerating Co.* v. *Faulk, supra,* and the case at bar. There the warrant of attorney was void, because made and entered into in Alabama in violation of the Alabama Statute. Here, the warrant of attorney was and is legal and binding between the parties, because made and entered into in the State of Ohio, where the agreement was, and is, authorized by law. There the judgment of the Illinois court was void, because all the jurisdiction of the Illinois Court ever obtained over the person of the defendant, if any, was obtained solely upon a void warrant of attorney. Here, the judgment of the Ohio court is legal and binding between the parties because based upon a legal and binding warrant of attorney, made and entered into in the State of Ohio. The Constitution of the United States did not require the State of Alabama to give

full faith and credit to the judgment of the Illinois court, which was void *ab initio*. Here, the Constitution of the United States does require the State of Alabama to give full faith and credit to the judgment of the Ohio court because that judgment is a valid and binding money judgment in favor of the plaintiff and against the defendant, for the enforcement of which the constitution and laws of the State of Alabama have provided a court, the circuit court of Montgomery County, in the jurisdiction of which the defendant resides, and from which plaintiff's suit on said judgment may not, constitutionally, be excluded."

We agree with this conclusion and particularly the last sentence. It is not contended herein that the facts were incorrectly found. A new trial is not asked and is unnecessary. Accordingly the judgment is reversed with instructions to the trial court to restate its conclusions of law in harmony with this opinion and to enter judgment for appellant.

Note.—Reported in 63 N. E. (2d) 417.