WITHERSPOON *v.* SALM.

[No. 19,608. Filed May 20, 1968. Rehearing denied July 2, 1968. Transfer granted January 28, 1969.]

*Iglehart & Hewins, James D. Lopp, John H. Jennings,* and *Lockyear & Lockyear,* all of Evansville, for appellant.

*Jerome L. Salm, Warren & Combs,* and *Welborn & Miller,* all of Evansville, for appellee.

CARSON, C. J.—This is an appeal from the Knox Circuit Court. The action below arose out of the appellant's claim

for damages to which appellee filed answer in three (3) paragraphs under Rule 1-3 of the Rules of the Supreme Court of Indiana. Paragraph I, being an answer in denial. Paragraph II, sets out an affirmative defense that the appellant was acting within the scope of her employment at the time of her alleged injuries and that said injuries arose out of said employment; that as a result thereof, an agreement was filed with the Industrial Board and compensation benefits were paid to the plaintiff-appellant; that the plaintiff-appellant's cause of action did not accrue within six (6) months before the commencement of the action. Paragraph III of the answer, alleges substantially the same facts, but further alleges that Herman Salm was President, Director, and stockholder of the employer, Salm's Incorporated, and that Herman Salm was not some person other than the employer, and against whom a legal liability to pay damages was created within the meaning of Section 13 of the Workmen's Compensation Act.

To the appellee's second paragraph of answer, the plaintiff-appellant demurred, stating that said paragraph did not state facts sufficient to constitute a cause of defense, and contended, among other things, that the cause of action arose under the laws of the State of Kentucky; that the accident occurred in Kentucky; that the Indiana Workmen's Compensation Act has no extraterritorial effect and that the substantive law of Kentucky would apply. Plaintiff-appellant demurred to the appellee's third paragraph of answer, alleging that said paragraph did not state facts to constitute a defense in that the decedent was a person other than the employer within the meaning of the Act and was, therefore, a proper third-party tortfeasor.

The trial court overruled plaintiff-appellant's demurrer to the second paragraph of answer and third paragraph of answer. Following this action, appellant filed reply in eight (8) paragraphs, however, only four (4) of them are before this court on appeal.

Appellant's first paragraph of reply, is filed pursuant to Rule 1-3 of the Rules of the Supreme Court. The third, fourth and fifth paragraphs substantially allege that the Executor of the Estate of Herman Salm, deceased, was an officer of the corporation and also an attorney and advised plaintiff-appellant that her rights would not be affected by signing Workmen's Compensation documents and that plaintiff-appellant had two years from the date of the occurrence in which to file a claim against the Estate of Herman Salm; that plaintiff-appellant relied upon these representations and that she had no knowledge that the period of time was less than two years in which to file her claim and plaintiff-appellant, therefore, pleads estoppel of the appellee to rely upon these matters as a defense.

To the various pleadings thus filed by the plaintiff-appellant, the appellee filed demurrers contending that the replies did not set forth facts sufficient to avoid the second amended paragraph of answer.

The trial court sustained the defendant-appellee's separate demurrers to the appellant's first, third, fourth and fifth paragraphs of reply.

Thereafter, the plaintiff-appellant refused to amend or plead further and the court entered the following judgment:

"It is therefore considered, ordered and adjudged by the court that the plaintiff take nothing by way of her complaint, and that the defendant be discharged and recover its costs herein."

Following the entry of the judgment, the appellant filed praecipe for an appeal and assignment of errors. The assignment of errors reads as follows:

"The Appellant avers that there is manifest error in the judgment and proceedings in this cause which is prejudicial to the Appellant in this:

"1. The trial court erred in sustaining Appellee's demurrer to Appellant's second amended first paragraph of reply to Appellee's amended second paragraph of answer.

"2. The trial court erred in sustaining Appellee's demurrer to Appellant's second amended third paragraph of reply to the Appellee's amended second paragraph of answer.

"3. The trial court erred in sustaining Appellee's demurrer to Appellant's second amended fourth paragraph of reply to the Appellee's amended second paragraph of answer.

"4. The trial court erred in sustaining Appellee's demurrer to Appellant's second amended fifth paragraph of reply to Appellee's amended second paragraph of answer.

"5. The trial court erred in overruling Appellant's demurrer to Appellee's third paragraph of answer.

"6. The trial court erred in overruling Appellant's demurrer to Appellee's amended second paragraph of answer."

The demurrers filed, serve to raise various questions of law, which may be summarized as follows:

1. What statute of limitations governs this cause of action?

2. Is the appellee estopped to assert the tolling of the statute of limitations by virtue of the alleged fraudulent misrepresentations of Jerome Salm?

3. Was Herman Salm a proper "third-party" tortfeasor under the Workmen's Compensation Act?

4. Should the substantive law of Kentucky or of Indiana, control?

5. Has the appellant elected her remedy by receiving Workmen's Compensation benefits?

For purpose of clarity, we feel it is necessary to briefly set forth the facts leading to the initiation of this action.

Herman Salm, deceased, was the President, a Director and a stockholder of Salm's Incorporated, a corporation authorized to do business in Indiana. Appellant held the position of purchasing agent, with Salm's Incorporated.

On, or about the 9th day of January, 1952, Herman Salm, accompanied by appellant and other employees of Salm's Incorporated, were on a business trip to one of Salm's stores in Paducah, Kentucky. A company car, driven by Herman Salm, was used for transportation.

Appellant alleged that on the same day, as she was riding as a passenger in said automobile, being driven by Herman Salm, on Highway 60, approximately three miles north of the City of Marion, Crittenden County, Kentucky, Herman Salm, deceased, willfully and wantonly, drove said automobile across the center line into the path of an approaching automobile; and, that by reason thereof, appellant was seriously injured.

Herman Salm died the day following the accident as a result of injuries occasioned by the accident. Appellant filed a claim for personal injury against the Estate of Herman Salm, in the Vanderburgh Probate Court. Subsequent to a motion for change of venue, the cause was transferred to the Knox Circuit Court, from which this appeal was taken.

As there is a total lack of evidence to the contrary, appellant is conclusively presumed to have accepted the provisions of the Workmen's Compensation Act *in toto* and where applicable. Acts of 1943, ch. 114, § 1; and, Acts of 1929, ch. 172, § 3; Burns' Anno. Stats., (1952 Replacement), §§ 40-1202, 40-1203, respectively.

See also: *Kelly* v. *Girdler Corp., 7 Cir.* (1953), 207 **F.2d** 703; followed by our Supreme Court in *Wright-Bachman, Inc.* v. *Hodnett, et al.* (1956), 235 Ind. 307, 133 N. E. 2d 713.

Acts of 1929, ch. 172 § 20; Burns' Anno. Stats. (1952 Replacement), § 40-1220, provides:

"Injury or death occurring outside the state.—Every employer and employee under this act [§§ 40-1201—40-1414, 40-1503—40-1704] shall be bound by the provisions hereof whether injury by accident or death resulting from such injury occurs within the state or in some

other state or in a foreign country. [Acts 1929, ch. 172, § 20, p. 536.]"

Approximately nine (9) months elapsed between the date of the accident and the date upon which plaintiff-appellant's claim was filed. Therefore, defendant-appellee maintains that the action was not filed within the six-month period provided in Acts of 1951, ch. 258, § 1; Burns' Anno. Stats., (1952 Replacement), § 40-1213; and, is forever barred.

We conclude that the six-month period specified in § 40-1213, *supra*, does control the bringing of this action and that plaintiff-appellant failed to comply therewith. However, plaintiff-appellant, in her third paragraph of reply, avers that defendant-appellee is estopped from asserting the statute of limitations as a bar, by virtue of the fraudulent misrepresentations of Jerome Salm, brother of the deceased and herein party-appellee, as Executor of the Estate of Herman Salm.

Plaintiff-appellant alleges that Jerome L. Salm, brother of the deceased; and officer of Salm's Incorporated, Executor of the Estate of Herman Salm and an attorney, advised her that she had two years from the date of the occurrence within which to file a claim against Herman Salm (or his estate).

> Generally, a misrepresentation as to a matter of domestic law is merely an expression of opinion and will not constitute an estoppel to a defense which claims the tolling of the statute of limitations.

The *general rule does not apply*, however, where:

"(1) the party making the representations is especially skilled in the law and the party to whom the representations are made is not so skilled, or (2) where there exists a relation of trust and confidence between the parties." *Waugh* v. *Lennard* (1949), 69 Ariz. 214, 211 P.2d 806, 814; *Kinney* v. *Dodge* (1884), 101 Ind. 573.

Defendant-appellee contends that as Jerome L. Salm represented an interest adverse to that of the appellant, the appellant knew of the adverse interest and is precluded from

asserting the alleged fraud as an estoppel. As stated in *Sainsbury* v. *Pennsylvania Greyhound Lines, Inc.* (1950), 4th Cir., 183 F.2d 548, 550, 551:

> "The rule is well established that when a lawyer makes a misrepresentation of law to a layman relief may be afforded, even though the layman knows the lawyer represents an antagonistic interest."

> The question of fraud in this case is one for the jury. *Meyers* v. *Newcomer* (1931), 93 Ind. App. 498, 176 N. E. 865.

We feel that the plaintiff-appellant's third paragraph of reply sufficiently pleads estoppel and that the trial court erred in sustaining the defendant-appellee's demurrer, thereto.

> We are familiar with the general rule many times stated by this court and our Supreme Court and recently followed in *Board of Commissioners, etc.* v. *Flowers* (1964), 136 Ind. App. 597, 600, 201 N. E. 2d 571, that:

> " . . . [W]here, on appeal, it is determined that the trial court committed reversible error on one point, the Appellate Tribunal need not discuss the other questions in the case."

But, since the other four (4) questions are likely to arise on the retrial, we will discuss those, also. *Brown* v. *State* (1953), 232 Ind. 227, 111 N. E. 2d 808.

We now turn to the question posed by appellant's demurrer to appellee's third paragraph of answer, to-wit: Was the decedent, at the time of the accident, *a person other than the employer,* and, therefore, personally liable for damages?

Herman Salm, deceased, was an officer, director and stockholder of Salm's, Incorporated, at the time of the accident. Appellee maintains that Acts of 1929, ch. 172, § 5, p. 536; being Burns' Anno. Stats., 1952 Replacement, section 40-1205, serves to preclude appellant from initiating a claim against Herman Salm's estate.

Said section provides as follows:

"Every employer who accepts or is bound by the compensation provisions of this act [§§ 40-1201—40-1414, 40-1503—40-1704], except the state, counties, townships, cities, towns, school cities, school towns, school townships, other muncipal corporations, state institutions, state boards, state commission, banks, trust companies and building and loan associations, shall insure the payment of compensation to his employees and their dependents in the manner hereinafter provided, or procure from the industrial board a certificate authorizing him to carry such risk without insurance, and *while such insurance or such certificate remains in force he or those conducting his business shall be liable to any employee and his dependents for personal injury or death by accident arising out of and in the course of employment only to the extent and in the manner herein specified.*" (Our emphasis).

As appellee suggests, this is a point of first impression in Indiana.

Acts of 1951, ch. 258, § 1, p. 733, being Burns' Anno. Stats., 1952 Replacement, section 40-1213, in pertinent portion, reads as follows:

"Whenever an injury or death, for which compensation is payable under this act [§§ 40-1201—40-1414, 40-1503—40-1704], shall have been sustained under circumstances creating in *some other person than the employer* a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death may commence legal proceedings against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this act." (Our emphasis).

Section 40-1205 contains the language "he or those conducting his business," while section 40-1213 omits the phrase "or those conducting his business," and permits a "legal proceeding" against "some other person than the employer."

Section 40-1213, *supra,* by its language, does not exempt a fellow employee from liability, *per se.*

The courts of other jurisdictions have construed provisions

similar to section 40-1213, *supra.* Judge Ellis, in the case of *Adams* v. *Fidelity and Causalty Co. of New York* (1958), La. App., 107 So. 2d 496, has determined that the phrase, "some person other than the employer," includes a director, officer or agent of the employer. See also: *Washington* v. *T. Smith & Son* (1953), La. App., 68 So. 2d 337; *Thompson* v. *Lacey* (1954), 42 Cal. 2d 443, 267 P. 2d 1; *Makarenko* v. *Scott* (1949), 132 W. Va. 430, 55 S. E. 2d 88; *Webster* v. *Stewart* (1920), 210 Mich. 13, 177 N. W. 230; *Frantz* v. *McBee Co.* (1955), Fla., 77 So. 2d 796.

Judge Ellis, *Adams, supra,* quoting from 19 C. J. S. Corporation § 845, p. 271, states:

"Broadly speaking a director, officer, or agent of a corporation is not, merely by virtue of his office, liable for the torts of the corporation or of other directors, officers, or agents.

"He is, however, as in the case of torts committed by agents generally, discussed in Agency § 220, liable in damages for injuries suffered by third persons because of his own torts, . . . regardless of whether or not the corporation is also liable. He cannot escape liability on the ground that in committing the tort he acted as a director, officer, or agent of the corporation, or on the ground that the corporation may also be liable. As in any case, it is, of course, necessary that the facts show the commission of a tort before the officer may be held liable therefor."

And from page 274 of 19 C. J. S.:

"*If the act complained of constitutes a breach of duty owed directly to the third person, there is personal liability. If such act consists only of a breach of duty which the officer or agent owes to the corporation, there is no such liability.*" (Emphasis added).

In determining the personal liability of a director, officer or agent for injury to a co-employee, the fundamental inquiry becomes: *Did the act complained of, constitute a breach of a duty owed directly to the co-employee?*

The "employer" here, being a corporate entity, we do not believe it the intention of the legislature to deny an injured employee a right of action against an official agent of the employer, merely because that agent held a position of officer, director and shareholder of the employer.

In the case at bar, Herman Salm took control of a company car for the purpose of transporting himself and co-employees to and from Paducah, Kentucky. Under those circumstances, there was a duty flowing directly to his co-employees.

Plaintiff-appellant maintains that the "situs of the wrong," being Kentucky, the substantive law of Kentucky should be applied. Appellant cites a number of tort cases as authority for this proposition. Neither counsel has cited an Indiana decision in which a conflict of law question arose from a host-guest relationship, though defendant-appellee contends that the substantive law of Indiana should be applied.

There is an actual conflict between the law of Kentucky and that of Indiana.

The law of Kentucky imposes upon a host the duty to use ordinary care not to injure his guest. The courts of Kentucky have held that in the event a plaintiff-guest establishes the conduct of the host to be wilful and wanton, a jury may award punitive in addition to compensatory damages. 3 Kentucky Digest, *Automobiles,* Key No. 181; 7 Kentucky Digest, *Damages,* Key No. 215.

Indiana, of course, has an automobile guest statute, which reads as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle." Acts 1929, ch. 201, § 1, p. 679; 1937, ch. 259, § 1, p. 1229; Burns' Anno. Stats. (1965 Replacement), § 47-1021.

Further, we find no Indiana decision awarding punitive damages to an injured guest.

There seems to only be one meritorious argument for the inadvertent application of the substantive law of the "situs of the wrong." That contention is that such application would render predictability and stability in the area of conflicts of law.

This argument fails in this instance in two respects. Firstly, stability becomes a virtue only when the stabilization process has entailed extensive litigation and the body of case law indicates that the inadvertent application of a principle of law has lead to a just and fair result in the vast majority of cases. Such is not the state of the "situs of the wrong" doctrine in the conflict of tort law.

Secondly, the argument that the mechanical application of the substantive law of the "situs of the wrong" lends a desirable degree of predictability, is unfounded in the case at bar. It is nonsense to consider the possibility that a host who proposes to transport a guest from one state to another would first set down and analyze the substantive law in each state through which he might have to travel and so plan his journey as to not drive through the states which impose a higher standard of care upon a host.

We feel no compulsion in this instance to blindly apply the "situs of the wrong" theory to this conflict question. More recent decisions in other jurisdictions have indicated that a choice of law is more conducive to justice in a majority of cases: *Babcock* v. *Jackson* (1964), 12 N. Y. 2d 473, 240 N. Y. S. 2d 743, 191 N. E. 2d 279; *Farber* v. *Smolack* (1967), 20 N. Y. 2d 198, 229 N. E. 2d 36; *Dym* v *Gordon* (1965), 16 N. Y. 2d 120, 209 N. E. 2d 792; Illinois: *Wartell* v. *Formusa* (1966), 34 Ill. 2d 57, 213 N. E. 2d 544; Minnesota: *Kopp* v. *Rechtzipel* (1966), 273 Minn. 441, 141 N. W. 2d 526; New Hampshire: *Clark* v. *Clark* (1966), 107 N. H. 351, 222 A. 2d 205; Oregon: *Casey* v. *Manson Construction Co.* (1967),

428 P. 2d 898; Pennsylvania: *Griffith* v. *United Airlines* (1964), 416 Pa. 1, 203 A. 2d 796; Wisconsin: *Wilcox* v. *Wilcox* (1956), 26 Wis. 2d 617, 133 N. W. 2d 408.

Our Supreme Court indicated a degree of fealty to the "choice of law" theory in the case of *W. H. Barber Co.* v. *Hughes* (1945), 223 Ind. 570, 63 N. E. 2d 417. The *Barber* case involved a conflict in the application of contract law. The Court, at page 586, advanced the following rule:

"The court will consider all acts of the parties touching the transaction in relation to the several states involved ██ and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact."

The United States Court of Appeals, Seventh Circuit in *Watts* v. *Pioneer Corn Company, Inc.* (1965), 342 F. 2d 617, disclaimed the inadvertent application of the *lex loci delecti* and extended the "choice of law" theory set forth in *Barber, supra,* to a wrongful death action involving a conflict of law. The *Watts* decision was followed in another Seventh Circuit case, *Gianni* v. *Ft. Wayne Air Service, Inc.* (1965), 342 F. 2d 621.

We would like to point out that the decisions of the Court of Appeals for the Seventh Circuit are not binding upon this court, though they may be used as a guideline. ██ *Lutz* v. *Goldblatt Brothers, Inc.* (1967), 140 Ind. App. 678, 225 N. E. 2d 843. (Transfer denied).

The landmark case in this area is *Babcock* v. *Jackson, supra.* In that case, the guest, Miss Babcock and her friends, Mr. and Mrs. Jackson, all residents of New York, left New York for a week-end trip in Canada. During their sojourn, in the Province of Ontario, Mr. Jackson lost control of the automobile and as a result, Miss Babcock was injured. Upon her return to New York, Miss Babcock filed suit for personal injury. Ontario's guest statute barred her recovery. The Court of Appeals of New York, in a five to two decision, held that

the interests and contacts surrounding an occurrence, should be weighed and the substantive law of the state with which the parties had the most significant contacts, should be applied.

In choosing to apply the substantive law of New York, the court in *Babcock, supra,* at page 284, analyzed the contacts, in light of the facts, to be thusly:

> "Comparison of the relative 'contacts' and 'interests' of New York and Ontario in this litigation, vis-a-vis the issue here presented, makes it clear that the concern of New York is unquestionably the greater and more direct and that the interest of Ontario is at best minimal. The present action involves injuries sustained by a New York guest as the result of the negligence of a New York host in the operation of an automobile, garaged, licensed and undoubtedly insured in New York, in the course of a week-end journey which began and was to end there. In sharp contrast, Ontario's sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there."

The analysis in *Babcock, supra,* has been criticized by a number of legal scholars for its apparent lack of consideration for policy.[1]

Since the *Babcock* decision, there has been a constant attempt to establish a hierarchy of significant contacts and interests for the ascertainment of the applicable substantive law in all cases. The Tentative Draft No. 9 of the Restatement Second, Conflict of Laws, poses such a hierarchy.

The hierarchy proposed by the American Law Institute has, likewise, been the subject of criticism.[2]

We feel that Indiana should follow the modern trend toward a "choice of law" in auto-guest cases. The greatest difficulty

---

[1] Comments on *Babcock* v. *Jackson*, A Recent Development in Conflict of Laws, 63 Col. L. R. 1212.

[2] Albert A. Ehrenzweig in 69 Yale Law Journal (1960), 595, Guest Statutes in the Conflict of Laws—Towards a Theory of Enterprise Liability under "Foreseeable and Insurable Laws." Brainerd Currie in 63 Col. Law Rev. (1963), 1239.

in choosing the law to be applied in a given case is: What should be considered in making the choice?[3] We can see no merit in the establishment of a heirarchy of considerations. Such an approach would merely revert to a mechanical counting of weighted considerations. This is an irrational approach, as a given consideration could be afforded more weight in one set of facts than in another. Neither should the mere numerical contacts with one State be balanced with those of another State. Each contact should be evaluated in light of collateral policy considerations and the particular State interests surrounding the rule of law.

We believe the more logical basis for a choice of conflicting law, could be stated: *Given a factual and legal situation, involving an actual conflict of law, which state has the greater interest in having its law applied?*

In light of this premise, we will proceed to an evaluation and analysis of the relevant interests of Kentucky and Indiana under the factual and legal situation promulgated in the case at bar. Kentucky has an interest in the application of its law for the protection of Kentucky domiciliaries, as well as non-residents, from the misconduct of drivers operating on Kentucky highways. This interest is somewhat mitigated by the fact that this accident involved two residents of Indiana.

The practical ramification of the standard of care imposed by each state, serves to reveal substantial interests. The law of Kentucky imposes upon the host, a duty to use reasonable care and if he should be found guilty of willful and wanton misconduct, he may, in addition, be liable to his guest for punitive damages. This rule, as a practical matter, expresses an interest favorable to the guest. The Indiana "Guest Statute" requires that the host be free from willful and wanton misconduct. As stated, *supra,* we find no Indiana decision permitting an award of punitive damages to a guest.

---

[3] Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y. U.L. Rev. 267.

As a practical matter, the law of Indiana expresses an interest favorable to a host.

In light of the foregoing analysis, Kentucky's interest in the protection of an Indiana guest in a suit to recover from an Indiana host, is minimal and the relative evaluation shows the controlling interest to be with the application of Indiana law.

The fact that this action gives rise to a claim against an estate being probated in Indiana, gives rise to an interest in the application of Indiana law. Indiana has a definite interest in the application of that body of law which would directly or indirectly serve to arrive at a distribution of the estate, in a manner equitable to those involved.

It appears from the record that the employment relationship in the case at bar was wholly Indiana based. Although the parties were on a business trip to a Salm's store in Kentucky, this type of trip was not a common occurrence in the everyday business of Salm's, Incorporated. Salm's, Incorporated, was authorized to do business in Indiana and thereby governed by the corporation law of Indiana. Appellant entered into and remained in the employ of Salm's Incorporated, in Indiana.

The Indiana Legislature has expressed an interest in this very type of litigation through the provisions of the Workmen's Compensation Act, section 1, *supra*.

As a result of the foregoing analysis, we conclude that in light of the facts of this case, Indiana has the greatest interest in having its law applied and the litigation between these parties should be resolved under the substantive law of Indiana.

We wish to indicate that this decision is not in conflict with the recent decision handed down by this division in the case of *Menze* v. *Clark* (1968), 142 Ind. App. 385, 13 Ind. Dec. 479, 235 N. E. 2d 69. In the *Menze* case, the conflict of law question was never raised.

We find no merit in appellee's contention that appellant, having received payments from her employer (Salm's), is precluded from bringing an action against appellee. In support of this contention, appellee cites *Robbins* v. *National Veneer and Lumber Co.* (1949), 120 Ind. App. 213, 88 N. E. 2d 773. The *Robbins* case is no authority as the Acts of 1951, ch. 258, § 1, p. 733, being Burns' Anno. Stats., 1952 Replacement, § 40-1213, is the law governing this litigation. Section 1 is quite clear and reads in pertinent part as follows:

"Whenever an injury or death, for which compensation is payable under this act [§§ 40-1201—40-1414, 40-1503—40-1704], shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death may commence legal proceedings against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this act. In such case, however, if the action against such other person is brought by the injured employee or his dependents and judgment is obtained and paid, and accepted or settlement is made with such other person, either with or without suit, then from the amount received by such employee or dependents there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or dependents, plus the medical, surgical, hospital and nurses services and supplies and burial expenses paid by the employer and the liability of the employer to pay further compensation or other expense shall thereupon terminate.

"If the injured employee or his dependents shall agree to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the said employer may have or claim a lien upon any settlement, award, judgment or fund out of which such employee might be compensated from the third party."

The rulings of the circuit court are reversed to the extent hereinbefore stated and it is ordered that the appellant be granted leave to amend her complaint to conform with the

applicable law of the State of Indiana. The circuit court is ordered to set this case for trial.

Judgment reversed.

Cooper and Faulconer, JJ., concur.

Prime, J., not participating.

NOTE.—Reported in 237 N. E. 2d 116.