UTOPIA COACH CORPORATION AND POLORON PRODUCTS, INC. V. GARY
WEATHERWAX

[No. 3-776A175. Filed August 21, 1978.]

*Kenneth P. Fedder,* of South Bend, for appellants.

*Anthony J. Iemma,* of Elkhart, *Gerald A. Kamm,* of South Bend, for appellee.

STATON, J. — Gary Weatherwax and Poloron Products, Inc. executed a Sales Exchange Contract, through which Weatherwax exchanged his entire interest in Utopia Coach Corporation for Poloron stock. Pursuant to the contract, Weatherwax also executed an Employment Contract with Utopia. Contrary to expectations, Utopia subsequently operated at a loss. Poloron terminated Weatherwax and sold Utopia. Weatherwax brought an action for breach of contract. The trial court awarded him earnings under the Employment Contract in the amount of $24,350.00. In addition, the trial court, without hearing evidence on the issue, found that Weaterwax had received a "worthless asset" (the Poloron stock) in exchange for his interest in Utopia; the trial court valued the stock and awarded Weatherwax $45,446.63. The trial court awarded Utopia $10,700.00 on its counterclaim.

On appeal, appellants Poloron and Utopia seek relief; appellee Weatherwax seeks additional damages. We affirm the judgment award-

ing Weatherwax $13,650.00 ($24,350.00 set off by the $10,700.00 counter-claim). We reverse the award of $45,446.63 and remand to the trial court for presentation of additional evidence on the value of the Poloron stock.

Through the mid-60's, Weatherwax operated the Utopia Coach Corporation, which manufactured recreational travel trailers. In 1966 and 1967, Utopia showed a profit. In 1968, Utopia lost money due to an office fire. In the same year, Weatherwax decided to sell Utopia in order to increase Utopia's operating capital.

On November 1, 1968, two agreements were executed: an Agreement and Plan of Reorganization (the Exchange Contract) between Poloron and Weatherwax, through which Poloron exchanged 4,872 shares of its stock for Weatherwax's entire interest in Utopia, with provision for additional shares based on future earnings; and an Employment Contract between Utopia and Weatherwax, engaging Weatherwax in an executive capacity for a fixed salary plus a percentage of net earnings. The Exchange Contract contained a clause indicating an intent that it be enforced under New York law. The Employment Contract contained a clause requiring binding arbitration of any dispute.

After the transfer of ownership, the quality of construction of trailers gradually declined while prices increased. Weatherwax's authority as president was supplanted by that of various Poloron employees who were dispatched to oversee Utopia's operations. The production division began leaving trailers unfinished due to an inability to secure parts. Relationships with dealers became strained and sales dropped. Friction increased between Weatherwax and the "outsiders" from Poloron. He was told by a manager to stay away from the plant. Finally, on July 8, 1970, Poloron terminated Weatherwax.[1] Poloron never realized a profit from Utopia, which was sold in 1971.

On March 29, 1971, Weatherwax filed his complaint, seeking damages, for Poloron's and Utopia's breach of contract. Poloron and Utopia filed a Motion to Dismiss, which was overruled.[2]

---

1. At his termination, Weatherwax owed Utopia $10,700 for materials he purchased (through Utopia) to build a house. The amount appeared on Utopia's balance sheets.

2. The motion argued that the trial court lacked jurisdiction, since, under the contract, Weatherwax was required to seek arbitration for any alleged breach.

At trial, evidence was presented, primarily concerning Utopia's operations before and after Poloron's acquisition, and the ensuing problems. After trial, the court made written findings of fact in which it designated as "worthless" the Poloron stock that Weatherwax had received. On its own initiative, the trial court valued the shares and awarded Weatherwax a judgment.

Appellants Poloron and Utopia raise two issues on review:

*ISSUE I:*  Whether the trial court erred in failing to grant appellants' Motion to Dismiss, in light of the arbitration clause contained in the Employment Contract.

*ISSUE II:*  Whether the trial court erred in granting judgment to Weatherwax for the value of the Poloron shares, where the trial court exercised its discretion, with no evidence before it on the issue.

Appellee has attempted to raise two issues for our review:

*ISSUE III:*  The trial court erred in failing to award punitive damages in light of Poloron's gross negligence in operating Utopia.

*ISSUE IV:*  The trial court erred in finding that Poloron did not breach the Exchange Contract by selling Utopia prior to the end of the "earn-out period."

## ISSUE I. ARBITRATION

The Employment Contract between Utopia and Weatherwax contained an arbitration clause:

"9.   Any dispute hereunder shall be submitted to and conclusively resolved by arbitration by, and in accordance with the Rules and Regulations of the American Arbitration Association. The parties designate the Chicago, Illinois office of the said Association as the place where such arbitration proceedings shall be conducted."

Appellants Poloron and Utopia claim that the trial court should have granted their Motion to Dismiss, since the contract required Weatherwax to seek his remedy through arbitration rather than the courts.

At the time the contract was executed, November 1, 1968, Indiana followed the common law rule against arbitration of disputes arising

after execution of the contract. An agreement which purported to oust the courts of jurisdiction over a future dispute was considered void as against public policy. *Kistler v. Indianapolis & St. Louis Railroad Co.* (1882), 88 Ind. 460, 464. It was consistently held that, under Indiana law, a contract provision requiring arbitration of future disputes was of no effect. *Lerma v. Allstate Insurance Company,* 301 F.Supp. 361 (N.D. Ind. 1968); *Vernon Fire and Casualty Insurance Company v. Matney* (1976), 170 Ind.App. 45, 351 N.E.2d 60; *Indiana Insurance Company v. Noble* (1970), 148 Ind.App. 297, 265 N.E.2d 419.

Appellants suggest that the arbitration clause could be effected under IC 1971, 34-4-2-1 *et seq.,* Ind.Ann.Stat. § 3-228 *et seq.,* (Burns Code Ed.), which creates a method of arbitration. The act was effective on August 18, 1969, after the date of execution of the Employment Contract, but prior to the breach of such contract. However, the statute is not retroactive by its own provision. IC 1971, 34-4-2-20. *See Pathman Construction Company v. Knox County Hospital Association* (1975), 164 Ind.App. 121, 326 N.E.2d 844.

In light of the prevailing law as applied to the Employment Contract, Weatherwax could not have been required to seek arbitration after the Contract had been breached.

Appellants Poloron and Utopia argue that the Employment Contract must be construed together with the Exchange Contract, which contains the following clause:

"25. *New York Law.* This agreement is being delivered and is intended to be performed in the State of New York and shall be construed and enforced in accordance with the laws of that state.

Under New York law, the arbitration agreement would have been effective. Civil Practice Law & Rules § 7501.

There is no question but that New York law would apply in the event of breach of the Exchange Contract. However, the question remains: what law should the court have applied in an action for breach of the Employment Contract, which contained no express provision of applicable law?

Appellants argue that the intent of the parties to apply New York law, here implied from the closely related Exchange Contract, must be given effect in construing the Employment Contract. *Paulausky v. Polish Roman Catholic Union of America* (1942), 219 Ind. 441, 39 N.E.2d 440. Weatherwax sets forth a contrary position:

"The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that "state with which the facts are in most intimate contact." *Witherspoon v. Salm* (1968), 142 Ind.App. 655, 237 N.E.2d 116, 123, quoting *W.H. Barber Co. v. Hughes* (1945), 223 Ind. 570, 63 N.E.2d 417, 423.

The latter cases closely approximate the position of the Restatement of the Law 2d, Conflict of Laws § 188 (1971). Where, as here, the court is *not* satisfied that the parties have chosen the state law to be applied, the court will apply the law of the state having the most significant relationship to the transaction. The court considers such factors as: the place of contract; the place of negotiation; the place of performance; the location of the subject matter; and the domicile or place of incorporation and place of business of the parties.

Clearly, the two contracts involved in this case bore some relationship to each other. Both were effective on the same date. Both involved the outcome of the transfer of control of Utopia. Each made reference to the other. However, the evidence is by no means unequivocal that the two were intended to be construed together, so that New York law would apply to the Employment Contract. In fact, the two contracts had only one party in common — Gary Weatherwax. Although he transferred control to Poloron, he was employed by Utopia. Where the parties to two contracts are not the same, the court need not construe the contracts together. *Nash Engineering Co. v. Marcy Realty Corporation* (1944), 222 Ind. 396, 54 N.E.2d 263.

An examination of the Employment Contract leads us to conclude that Indiana had the closest relationship to the contract. The contract was between an Indiana corporation and an Indiana resident. It involved employment principally in Indiana. In fact, the only connection to New York was a reference to Poloron, the New York corporation which had acquired Utopia's stock.

Since Indiana had the closest relationship to the Employment Contract, the trial court acted properly in applying Indiana law and in giving no effect to the arbitration clause. The trial court did not err in refusing to grant appellants' Motion to Dismiss.

ISSUE II: VALUE OF THE POLORON STOCK

Appellants claim the trial court erred when it found that the Poloron stock received by Weatherwax, in exchange for his interest in Utopia, was worthless, and when it valued the stock and awarded Weatherwax a money judgment.

In his complaint, Weatherwax charged that Poloron failed to deliver the proper shares of Poloron stock, but instead issued stock containing restrictions on transferability, making such stock valueless to him. At trial, however, Weatherwax presented no evidence on this issue. At the close of plaintiff Weatherwax's case, trial counsel for defendants Poloron and Utopia commented on the lack of evidence on this point, and trial counsel for Weatherwax agreed with him. The trial court asked Weatherwax's counsel:

"You have proof of everything except as to the stock. Is that what you said? Well, in any event, this is a court case and we can get it straightened out."

No further references to the value of the Poloron stock were made at trial.

After the trial had ended, the trial court advised the attorneys of its proposed findings and judgment, in which the trial court found the Poloron stock to be a worthless asset, valued the stock, and awarded a judgment in the sum of $45,446.63 to Weatherwax. Appellants filed a motion for further oral argument, as well as a memorandum containing evidence appellants would produce regarding the value of the Poloron stock. The court indicated that the evidentiary matters which appellants proposed to submit could only be considered as grounds for receiving additional evidence if they constituted newly discovered evidence.[3] However, since the evidence was not newly discovered, the court would not permit the cause to be reopened for additional evidence.

---

3. The trial judge treated appellants' request as a premature allegation in a motion to correct errors.

On February 9, 1976, the trial court entered its Findings of Fact and Judgment, which were virtually identical to those proposed earlier. Among them were several controversial ones. The trial court, on its own initiative, reviewed the Exchange Contract. Certain paragraphs were deemed to render the Poloron stock worthless.

"15. *Investment Representation.*

(a) This Agreement is made by Poloron upon the representation by Shareholder that he is or will be acquiring the Poloron Stock to be issued to him hereunder for investment for his own account, and with no present intention of dividing his ownership with others or reselling or otherwise distributing the same and that he will not make any distribution or transfer of any interest in any of the Poloron Stock in the absence of an effective registration statement for such shares under the Securities Act of 1933 unless Poloron shall have received from its counsel an opinion to the effect that registration is not required under the Act.

(b) Shareholder covenants and agrees that upon each delivery of Poloron Stock to him hereunder, he shall, as a condition to Poloron's obligation to deliver such shares, deliver to Poloron a letter dated as of the date of delivery of such stock in such form as may reasonably be acceptable to counsel for Poloron, confirming that such stock is being taken for investment without any intention of reselling or distributing the same.

(c) All the Poloron Stock issuable pursuant to this Agreement will be endorsed by Poloron with the following legend:

'This certificate has been issued pursuant to an agreement dated , 1968, to which Poloron Products, Inc.' is a party, and may not be sold, assigned or transferred unless and until covered by an effective registration statement under the Securities Act of 1933 as amended, or unless and until Poloron Products, Inc. receives an opinion from its counsel that such registration is not required.' "

Paragraph 16 addressed registration of the stock.

In his findings of fact and judgment, the trial court sought to effect what he regarded as the true intent of the parties, to exchange value for value. Specifically, he found as follows:

"16. The plaintiff has not in his pleadings sought reformation of The Exchange Contract. Whether by construction of the contract as framed or by reforming it, however, the Court is convinced that

when Poloron (acting in behalf of Utopia) breached The Employment Contract by terminating the plaintiff on July 8, 1970 it became liable to him for amounts beyond the salary he would have earned for the balance of the contract period but for his termination. The shares of Poloron stock he was given in exchange for all the ownership interest he or anyone else had in Utopia, some 4,872 in number, are made non-negotiable. The Exchange Contract recites at length the undertaking of the parties that plaintiff was acquiring his Poloron shares for his own investment purposes; and The Exchange Contract prohibits him from transferring or negotiating them except under certain conditions. The Court finds that, as framed, The Exchange Contract, though in respects relevant to the present issue it seems quite unilateral in Poloron's favor, is not a contract of adhesion; for the Court also finds that the plaintiff had the advice and benefit of his own independent counsel at the time of negotiating and executing it."

"The Court is convinced, however, and now finds that, whether by mutual mistake, clerical oversight, or otherwise, Article 15 of The Exchange Contract is incomplete. It provides absolutely nothing concerning plaintiff's negotiability of the shares he received in exchange for his Utopia shares, except that he shall *not* negotiate them (absent what The Exchange Contract calls certain 'effective registration statements'). This means that upon the contingency of his death, disability or, as here, summary termination, or even after The "Employment Contract 'would have expired by its terms,' that an utterly worthless 'asset' becomes the plaintiff's 'payment' for selling his entire business, a sale which the Court has heretofore found was complete and total in all respects.

"Accordingly, the Court now invokes the authority granted it by Trial Rule 54(C) and either reforms The Exchange Contract or otherwise '. . . grant[s] the relief to which the [plaintiff] in whose favor [the judgment] is rendered is entitled, even if [he] has not demanded such relief in his pleadings.' The issues into which the Court has run in its analysis of the case were not treated by the evidence and have not been briefed by counsel. The Court finds, however, that it is compelled to reform the contract to avoid an absurd result or, alternatively finds that the relief requested by the plaintiff is framed in sufficiently broad language to justify reformation."

In Findings Nos.17 through 19, the court valued the stock, using a method of computation referred to in the Exchange Contract. From data reported in the *Wall Street Journal*, the court took the mean of the

average high and low for the stock for the twenty days prior to the date the Employment Contract was breached (the day Weatherwax was fired). The court multiplied this figure, 9.328125, by the number of shares (4,872) to arrive at the judgment award of $45,446.63.

On appeal, appellants point out (as the trial court itself noted) that the value or worth of the Poloron stock was an issue that had not been litigated by the parties and on which no evidence had been presented. Nonetheless, their attempts to have the trial reopened for the presentation of evidence on the value of the stock were rebuffed by the trial court.[4]

The refusal of the trial court to reopen a case for the presentation of additional evidence rests within its sound discretion. *Terry v. Terry* (1974), 160 Ind.App. 653, 313 N.E.2d 83, 90; *Preuss v. McWilliams* (1967), 141 Ind.App. 602, 230 N.E.2d 789, 792. This court will set aside such a decision only for an abuse of such discretion.

"An abuse of discretion has been defined as an erroneous conclusion and judgment which is clearly against the logic and effect of all the facts and circumstances before the court." *Parks v. Koser* (1955), 125 Ind.App. 585, 126 N.E.2d 785, 790.

*See also Dunbar v. Dunbar* (1969), 145 Ind.App. 479, 251 N.E.2d 468.

"What is usually referred to as an abuse of discretion, but which the writer prefers to call 'clear error,' results not only when an exercise of discretion is without reason, but also when it is based upon impermissible reasons or considerations." *City of Elkhart v. Middleton* (1976) [265] Ind. [514], 356 N.E.2d 207, 210-11.

On appeal, we review the record only to determine whether the findings and judgment were supported by substantial evidence of probative

---

4. In the Record, in its Memorandum in Opposition to the Proposed Judgment, appellants included copies of letters that were part of their offer of proof. The letters tended to show that in 1969, Weatherwax had pledged the Poloron stock as collateral on a $50,000 loan, which was never repaid. In 1972, the bank requested removal of the restrictions on transferability. The S.E.C. indicated it would not seek compliance with the registration requirement prior to the proposed sale of the stock to pay off the loan; further, it permitted removal of the restrictions on transferability. Thus, the rejected evidence tends to show that Weatherwax realized value (by pledging the stock) even before his termination, and that the transfer restrictions did not make the stock worthless.

value. *Flora v. Flora* (1975), 166 Ind.App. 620, 337 N.E.2d 846; *Bassemier v. Sartore* (1965), 246 Ind. 365, 205 N.E.2d 160.

We find that the trial court abused its discretion in granting judgment on the value of the Poloron stock, without affording both parties an opportunity to present evidence on the matter. Review of the record shows that the trial court's actions were based solely on the assumptions raised by its reading of the Exchange Contract. Among those assumptions was that a restriction on transferability (or alternatively, the need to procure an S.E.C. registration statement prior to transfer) rendered the stock worthless. The trial court, on its own initiative, valued the stock and awarded a money judgment, with no evidence before it that Weatherwax had received a worthless asset when he accepted the stock. Such a judgment was speculative at best. *See Wright Manufacturing Corporation v. Scott* (1977), 172 Ind.App. 154, 360 N.E.2d 2, 9. Further, the record fails to show what happened to the stock certificate which had been issued to Weatherwax. If the stock certificate was "worthless," the trial court could have requested its return. Otherwise, if the stock certificate had been disposed of for value, Weatherwax would have received more than he was entitled to, either under the contract or the judgment.

Where no evidence was presented at trial on the value of the stock, the trial court could have requested both parties to present evidence on the matter, before making its findings of fact. Where, as here, it made findings and rendered judgment not supported by the evidence, it should have opened the evidence and taken additional evidence, under Ind. Rules of Procedure, Trial Rule 52(B)(1). The value of the Poloron stock was a factual issue that should not have been determined without the invocation of trial procedures.

In this case, appellants Poloron and Utopia sought to introduce additional evidence which, if proved, was likely to have changed the result of the trial.[5] The refusal of the trial court to hear such evidence constituted an abuse of discretion.[6]

---

5. *See* footnote 4.

6. The trial court perceived this request as an attempt to present newly discovered

We remand to the trial court for the presentation of additional evidence on this issue.

ISSUES III and IV:

In their reply brief, appellants Poloron and Utopia argue that appellee Weatherwax has waived these issues due to his failure to set forth in his brief his motion to correct errors and the judgment thereon.

AP. 8.3(A)(7) of Ind. Rules of Appellate Procedure requires a party to include in his brief each error assigned in the motion to correct errors that he intends to raise on appeal, followed by the applicable argument. AP. 8.3(A)(4) requires inclusion of a verbatim statement of the judgment thereon. Appellee Weatherwax has failed to comply with the rules in his brief.

This Court may either affirm the judgment in favor of appellants, or may grant appellee time to file an amended brief. *Citizens National Bank of Grant County v. Harvey* (1975), 167 Ind.App. 582, 334 N.E.2d 719, 720. However, in the interests of time and justice, we will consider the arguments raised in appellee's defective brief.

## III. PUNITIVE DAMAGES

Appellee Weatherwax argues that the trial court's failure to award punitive damages, in light of Poloron's heedless disregard of the consequences and gross negligence in its operation of Utopia, is reversible error.

The general rule in Indiana is that punitive damages are not recoverable in a contract action. *Vernon Fire & Casualty Insurance Company v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173. In order for appellee to have been awarded punitive damages, he must have shown that appellants committed an independ-

---

evidence, under TR. 59(A)(6). The court found the rule inapplicable, since the events relied on by appellants occurred prior to trial.

However, the evidence of the stock's value was not intended to be presented as newly discovered evidence. Appellants were not required to present the evidence at trial, since the plaintiff failed to present any evidence at all on the worthlessness of the stock in his case-in-chief. The value of the stock did not become important until the trial court made its determination.

ent tort or engaged in conduct that was tortious in nature; in addition he must have shown that the public interest would be served by an award of punitive damages. *Vernon, supra; Jos. Schlitz Brewing Company v. Central Beverage Co., Inc.* (1977), 172 Ind.App. 81, 359 N.E.2d 566. Finally, the award of punitive damages is discretionary. *Hibschman Pontiac, Inc. v. Batchelor* (1976), Ind.App., 340 N.E.2d 377.

In its Finding of Fact No. 8, the trial court specifically stated:

"There is no evidence, and the Court thus finds that the plaintiff has failed to prove, that defendants Poloron or Utopia, singly or in concert, conducted their business affairs with heedless or oppressive disregard for the interests and economic welfare of the plaintiff, by reason of which finding the Court must further find, and does further find, that on the evidence adduced a plaintiff is not entitled to punitive or exemplary damages under any count of his complaint."

In a recent decision, the Indiana Supreme Court noted:

"A finding, which is in effect a negative finding against the plaintiff, may be set aside only if the evidence is uncontradicted and will support no reasonable inference in favor of the finding." *Taxpayers Lobby of Indiana, Inc. v. Orr* (1974), 262 Ind. 92, 311 N.E.2d 814, 819.

Weatherwax is urging us to set aside a negative finding. However, the trial court made the finding after hearing all the evidence of Poloron's conduct of Utopia's business operations. The evidence is *not* uncontradicted that Poloron or Utopia operated with heedless or oppressive disregard for the interests of Weatherwax. We find no error as to the trial court's refusal to award punitive damages.

## IV.  ADDITIONAL COMPENSATORY DAMAGES

Weatherwax urges this court to award him compensatory damages for Poloron's breach of the Exchange Contract, which occurred upon sale of Utopia prior to the expiration of the earn-out period. According to the Exchange Contract, Weatherwax was to receive additional shares of Poloron stock based upon the net profits of Utopia. Poloron sold Utopia prior to the end of the term over which such profits were to be considered. However, the evidence is undisputed that Utopia never made

any net profits and never showed any signs of becoming profitable if Poloron retained control.

We note that appellee Weatherwax failed to raise this issue in his original complaint; we will not consider it now. On its own, the trial court specifically noted in its Finding of Fact No. 10:

"Because there is no evidence that Poloron breached The Exchange Agreement by way of any managerial decisions that were made and implemented or which might have been made and implemented but were not, Article 2.(b), 'Additional Shares to the Shareholder' is not drawn in issue; for the undisputed evidence is that in 1969 and 1970, the applicable years for computation of additional shares, Utopia sustained substantial losses. Since the number and value of additional shares were by the contract keyed to the net earnings of Utopia for those years, and since these findings conclude that the losses actually sustained were not shown by preponderance of the evidence to have resulted from Poloron's breach of contract, there simply is no occasion to resolve any questions arising under the 'Additional Shares' portions of The Exchange Contract."

We affirm the trial court's judgment awarding Weatherwax $13,650.00 ($24,350.00 set off by the $10,700.00 counterclaim). We reverse the trial court's award of $45,446.63 to Weatherwax, and we remand to the trial court for the presentation of evidence on the value of the Poloron stock.

Lowdermilk, J. (By designation) concurs;

Hoffman, J., concurs.

NOTE—Reported at 379 N.E.2d 518.