**ROCKWOOD INSURANCE CO., Plaintiff,**

**v.**

**ILLINOIS STATE MEDICAL INTER–INSURANCE EXCHANGE, Defendant.**

**Civ. No. H 85–655.**

United States District Court, N.D. Indiana, Hammond Division.

July 31, 1986.

Jon F. Schmoll, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, Ind., for plaintiff.

Jerome Groark, Rooks, Pitts & Poust, Chicago, Ill., G. Edward McHie, McHie, Myers & McHie, Hammond, Ind., for defendant.

## ORDER

MOODY, District Judge.

This matter is before the court on Defendant Illinois State Medical Inter-Insurance Exchange's ("ISMIE") Motion for Judgment on the Pleadings of February 25, 1986 and Plaintiff Rockwood Insurance Company's ("Rockwood") Motion for Summary Judgment of April 4, 1986. Rockwood, an Indiana insurance company, brought a declaratory action against IS-MIE, an Illinois insurance company, on July 3, 1985 seeking determination of the respective liability of each company to a common insured, Dr. Sashi Daman Paul. For the reasons discussed below, ISMIE's Motion for Judgment on the Pleadings is DENIED and Rockwood's Motion for Summary Judgment is GRANTED.

## I.

The facts surrounding this controversy are undisputed. Dr. Paul, a physician and surgeon licensed to practice medicine in both Indiana and Illinois, was insured by a professional liability policy issued by IS-MIE which was numbered 203584. This policy was effective for the period of July 1, 1980 to July 1, 1981 and had liability limits of $250,000 per claim and $750,000 in the aggregate. The ISMIE policy covered Dr. Paul throughout the United States. Dr. Paul was also insured by a professional liability policy issued by Rockwood which was numbered 4122. This policy was effective for the period of June 1, 1981 to June 1, 1982 and had liability limits of $100,000 per occurrence and $300,000 in the aggregate. The Rockwood policy did not cover Dr. Paul outside Indiana.

Dr. Paul was licensed to practice medicine in both Indiana and Illinois. Rockwood contends, and ISMIE has not disputed, that 90% of his medical practice was in the State of Indiana during the time period relevant to this case. On June 24, 1981 Dr. Paul rendered professional services to a minor, Christopher Berner, in Dr. Paul's Munster, Indiana office. On June 26, 1981, Berner was hospitalized at St. Margaret's Hospital in Hammond, Indiana.

During this hospitalization in Indiana, Dr. Paul rendered professional medical care to Berner.

As a result of allegedly negligent medical care rendered between June 24, 1981 to June 26, 1981, Berner, a minor, by his mother, filed a lawsuit alleging professional negligence against Dr. Paul and others. The lawsuit was filed in Illinois in the Circuit Court of Cook County, County Department, Law Division, Cause No. 84–L–747 entitled *Christopher Berner, A Minor, by Kathleen Berner, his mother and next friend, v. Sashi Daman Paul, M.D., Kuhlman Drug, Inc., an Illinois Corporation a/k/a Joy Drugs and Birute Apke.*

The primary point of contention between ISMIE and Rockwood concerns their potential liability under their respective policies for the alleged negligent conduct of their common insured, Dr. Paul. Each policy contains an "other insurance" clause that purports to determine respective liability when the insured has another policy. The ISMIE other insurance clause provides that ISMIE coverage will be excess, rather than primary, in the event that the insured has other valid insurance. The Rockwood other insurance clause provides that the liability is to be prorated between all insurers. ISMIE maintains that its clause should be given effect applying Illinois law. Rockwood asserts that Indiana law should be applied, thus giving effect to its clause. Neither insurance policy specifies which state's law is to govern. The parties do not dispute that the essential question in this case is whether the policies are governed by Indiana or Illinois law.

## II.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Coldwell Banker & Co. v. Karlock,* 686 F.2d 596, 600 (7th Cir.1982). This court, therefore, looks to Indiana's choice-of-law rules on contracts.

Indiana has long adhered to the intimate contacts test for its choice-of-law rule. This rule was first articulated in *W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417 (1945), wherein the supreme court set forth the following standard to determine what law to apply in contract disputes:

> The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.

223 Ind. at 586, 63 N.E.2d at 423. *Coldwell Banker & Co.,* 686 F.2d at 600.

This approach has since been elaborated in the *Restatement (Second) of Conflict of Laws,* § 188, which has been cited with approval in *Coldwell Banker & Co.,* 686 F.2d at 600 and *Utopia Coach Corp. v. Weatherwax,* 177 Ind.App. 321, 325, 379 N.E.2d 518, 522 (1978). However, before applying the intimate contacts test, the court must determine that the laws of the states in question are in conflict and that the parties to the contracts have not effectively chosen which state's law is to apply.

This case clearly presents a conflict between Indiana and Illinois law in respect to the effect given to other insurance clauses. Other insurance clauses represent an attempt to reduce or limit the liability of the insurer in the event of concurrent coverage of the same risk by another insurer. Frandsen, *1981 Survey of Recent Developments in Indiana Law: Insurance,* 15 Ind.L.Rev. 247, 252 (1982). An excess other insurance clause, as contained in the ISMIE policy, provides that the insurance will be excess if the insured is also covered by another policy. A pro rata other insurance clause, as in the Rockwood policy, provides for proration of the loss when there is concurrent coverage. Even though virtually all insurance policies, other than life insurance, contain some form of other insurance clause, insurers have repeatedly called upon the courts to reconcile conflicting clauses. *Id.* Thus, the courts of Indiana and Illinois have amply developed their quite different approaches to other insurance clauses.

Illinois follows the so-called "majority rule." When Illinois courts are presented with an excess clause in one policy and a pro rata clause in another policy, they give effect to the excess clause. *Putnam v. New Amsterdam Casualty Co.*, 48 Ill.2d 71, 269 N.E.2d 97, 102 (1970); *Honeywell, Inc. v. American Motorists Insurance*, 109 Ill.App.3d 955, 65 Ill.Dec. 435, 438, 441 N.E.2d 348, 351 (1982). Illinois courts explain this result as giving effect to the "unambiguous meaning" of the clauses. *Potts v. Madison City*, 112 Ill.App.3d 50, 67 Ill.Dec. 741, 745, 445 N.E.2d 33, 37 (1983). The courts do not perceive a conflict between an excess clause and a pro rata clause. *Putnam*, 269 N.E.2d at 104. The policy with the pro rata clause is deemed primary insurance and thus, the primary insurer must bear the loss up to its policy limit before the excess insurer becomes liable. If Illinois law governs this case, Rockwood is primarily liable and ISMIE is not liable at all until Rockwood's policy limit has been reached.

Indiana courts faced with an identical situation reach a very different result. When presented with both an excess and a pro rata clause, Indiana courts perceive a fundamental conflict: either clause could be given its intended effect to the detriment of the other clause, depending arbitrarily upon which policy was read first. *Indiana Insurance Co. v. American Underwriters, Inc.*, 261 Ind. 401, 406, 304 N.E.2d 783, 788 (1973). In order to resolve the conflict, Indiana follows the pro rata rule as applied in *Lamb-Weston, Inc. v. Oregon Auto Insurance Co.*, 219 Or. 110, 341 P.2d 110 (1959), a case resolving the conflict between an excess clause and a pro rata clause by ignoring both clauses. *Indiana Insurance Co.*, 261 Ind. at 406, 304 N.E.2d at 788. Although the results of Indiana decisions, as a practical matter, appear to give effect to the pro rata clause, the Indiana pro rata rule is articulated as requiring both clauses to be ignored. *Id.* at 787. Each insurer shares primary liability and is liable for a prorated amount up to its policy limit. *Indiana Insurance Co. v. Federated Mutual Insurance Co.*, 415 N.E.2d 80, 86 (Ind.Ct.App.1981). If Indiana law governs this case, Rockwood and ISMIE are both primary insurers and are liable for a prorated amount of the loss.

■ The intimate contacts test is available to resolve this conflict so long as the court is satisfied that the parties have not chosen the state law to be applied. *Utopia Coach Corp.*, 177 Ind.App. at 325, 379 N.E.2d at 522. Neither the Rockwood policy, nor the ISMIE policy contains a choice-of-law clause or language that could be construed as a choice of law. This court, therefore, applies the intimate contacts test as elaborated in the *Restatement (Second) of Conflict of Laws*.

The *Restatement* lists factors to be taken into account in determining which state has the most intimate contacts with the transaction. In pertinent part, § 188 provides:

(2) In the absence of an effective choice of law by the parties ..., the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Restatement (Second) of Conflict of Laws*, § 188(2) (1971). Several of these factors are of equal weight in this case. The place of contracting, negotiation, and place of business are Illinois for the ISMIE policy and contacts with Indiana for the Rockwood policy. Dr. Paul is licensed to practice in both Indiana and Illinois. Because these factors are of equal weight, the court necessarily places more emphasis on the remaining factors—the place of performance and the location of the subject matter.

■ ISMIE apparently would have this court place the greater weight on the place of performance. ISMIE asserts that Illinois law should be applied to both policies because: (1) the underlying lawsuit (between Berner and Dr. Paul) is pending in Illinois; (2) the plaintiff in the underlying suit is an Illinois resident; (3) allegedly, "all actions" (discovery, negotiations, settlement) will take place in Illinois; and (4) any money paid in resolution of the underlying suit will be to Illinois residents in Illinois. In applying the intimate contacts test, it is important to note that § 188 provides for the court's consideration of acts of the parties to be contracts, not acts of a plaintiff in an underlying suit against the insured. Where the "underlying plaintiff" resides, chooses to bring suit, or may receive payment can carry little weight in comparison to the location of the subject matter of a professional liability insurance policy. With respect to the particular issue in this case, between two insurance companies, and not affecting the underlying suit, the factors outlined by ISMIE are of minimal importance.

■ The location of the activity that is the subject matter of the insurance contracts is of great importance in determining which law applies to this case. Each insurance policy, by its terms, defines its policy territory and therefore the locations at which Dr. Paul may practice under the protection of the contract. Unlike the place where an underlying suit might be filed, the area in which a professional may practice under his insurance is almost certain to be a "bargained for" term of the contract. The ISMIE policy provides coverage for occurrences throughout the United States and so covers Dr. Paul's professional activity in Indiana. The Rockwood policy only covers Dr. Paul while practicing in Indiana. The coverage of both policies come into dispute due to an occurrence in Indiana. Therefore, Indiana has more intimate contact with the insurance policies than Illinois.

Case law provides support for the application of Indiana law under these circumstances. In *Norfolk & Western Railway Co. v. Hartford Accidental & Indemnity Co.*, 420 F.Supp. 92, 94 (N.D.Ind.1976), the court considered the nationwide effect of the insurance contract and the place where the tort liability arose to be the most significant factors in deciding which state's law to apply. Because the insurance policy covered the insured in every state, the court concluded that it therefore incorporated the substantive law of every state in which the insured's activities might take place. *Id.* This conclusion is consistent with the "true test for determining the proper law governing a contract [—that] is the intent of the parties." *Sullivan v. Savin Business Machine Corp.*, 560 F.Supp. 938, 939 (N.D.Ind.1983). ISMIE cannot now claim that it did not intend to insure Dr. Paul practicing in Indiana or that it could not have anticipated the application of Indiana law to a dispute arising out of the insured's activities in Indiana.

The *Restatement* supports the application of Indiana law in this case. § 193 specifically addresses insurance contracts:

§ 193. Contracts of Fire, Surety or Casualty Insurance.

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Restatement (Second) of Conflict of Laws,* § 193 (1971).

Rockwood's policy is clearly limited to Indiana. The principal and only location of the insured risk for the Rockwood policy is Indiana.

While ISMIE has not asserted that the principal location of the insured risk for its policy was Illinois, Rockwood maintains and ISMIE does not deny that 90% of Dr. Paul's medical practice was located in

Indiana during the time-period relevant to this case.[1] The *Restatement* explains that even if the principal location of the risk shifts to some state other than that understood at the time of contracting, application of the law of the other state would not be unfair to the insurance company, if the company had reason to foresee that there might be a shift in location. *Restatement (Second) of Conflict of Laws*, § 193, comment d.[2] ISMIE does not dispute that Dr. Paul was licensed to practice in both Indiana and Illinois at the time of contracting. ISMIE had reason to foresee that Indiana might be or might become the principal location of Dr. Paul's activities. The application of Indiana law is not unfair to ISMIE.

■ The intimate contacts test of § 188 requires the court to consider the relevant policies and interest of the states in the choice of law determination. *Restatement (Second) of Conflict of Laws* § 6 (referred to in § 188 and § 193). Illinois has an expressed interest in giving contracts the effect their language commands. *Putnam*, 48 Ill.2d at 76, 269 N.E.2d at 104. The Illinois rule which gives effect to excess other insurance clauses is indicative of the "general contract doctrine encouraging parties to contract freely without fear of judicial interference." *Federated Mutual Insurance Co.*, 415 N.E.2d at 84.

Illinois interests and policies will not be greatly harmed by the application of Indiana law to the present case. While the excess clause in the ISMIE policy will not be given effect, ISMIE clearly could have foreseen the application of Indiana law when it provided coverage for activities taking place in Indiana. Although some Illinois insurers may tremble at the thought of judicial interference in Indiana courts, they retain the power to bargain freely for specific choice-of-law clauses, limitations on policy territory, or other more creative provisions.

The application of Illinois law in the present case would certainly frustrate Indiana's policies. The policies behind the Indiana pro rata rule include encouraging timely settlements, discouraging litigation between insurers, preventing windfalls to one insurer at the expense of another, enabling underwriters to predict the losses of insurers more accurately, and generally providing a basis for uniform court results. *Indiana Insurance Co.*, 261 Ind. at 406, 304 N.E.2d at 788. If Illinois law were applied under the facts now before the court, non-Indiana insurers would be encouraged to delay settlement and litigate in the hopes of receiving a windfall to the detriment of an Indiana insurer. An Indiana insurer would also be more likely to bring suit, as Rockwood has done, to require participation in the risk-taking process. Considering the policies of both Indiana and Illinois, under the Indiana intimate contacts test, this court finds that Indiana law governs the present case.

### III.

Both ISMIE and Rockwood contend that they are entitled to judgment in their favor as a matter of law. ISMIE has filed a Motion for Judgment on the Pleadings. Rockwood has filed a Motion for Summary Judgment.

A motion for judgment on the pleadings and a motion for summary judgment receive identical treatment in several impor-

---

1. The court does not consider Rockwood's assertion that 90% of Dr. Paul's practice was located in Indiana for purposes of a motion on the pleadings because this fact was not contained in the pleadings.

2. In relevant part, comment d states:
   There may also be occasions when following the issuance of the policy the principal location of the risk is shifted to some other state. In such a situation, this other state will have a natural interest in the insurance of the risk, and it may be that its local law should be applied to determine at least some issues arising under the policy. In any event, application of the local law of the other state would hardly be unfair to the insurance company, at least with respect to some issues, if the company had reason to foresee when it issued the policy that there might be a shift to another state of the principal location of the risk. Restatement (Second) of Conflict of Laws, § 193, comment d (1971).

tant respects. In order to grant either motion, the court must find that there is no genuine issue of material fact presented and that one party is clearly entitled to judgment as a matter of law. *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 178 n. 2 (7th Cir.1986); *Flora v. Home Federal Savings & Loan Association*, 685 F.2d 209, 211 (7th Cir. 1982). For purposes of either motion, the court is required to accept as true the facts alleged by the party opposing the motion and to view these facts in the light most favorable to the opposing party. *See e.g., Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984); *Flora*, 685 F.2d at 211. Finally, the court is not bound by the legal characterizations that either party gives to the facts. *Republic Steel Corp.*, 785 F.2d at 177 n. 2.

■ The significant difference between a motion for judgment on the pleadings and a motion for summary judgment is that the former is based solely on the pleadings, while the latter functions to go beyond the pleadings. J. Moore & J. Kennedy, *Moore's Federal Practice*, § 56.09 (2d ed. 1985). Although the court may convert a motion for judgment on the pleadings into a motion for summary judgment when the parties have submitted materials outside the pleadings, this should be done only after providing the parties with notice and opportunity to submit other evidence. *Coldwell Banker & Co.*, 686 F.2d at 604. This court has not notified the parties of an intention to treat ISMIE's motion as a motion for summary judgment. The court, therefore, confines itself to the narrow approach appropriate to judgment on the pleadings.

■ ISMIE is not entitled to judgment as a matter of law. This court's determination that Indiana law governs the present case rests upon the undisputed facts contained in the pleadings viewed in the light most favorable to Rockwood: Dr. Paul was licensed to practice in Indiana, his alleged tort liability arises from professional services rendered in Indiana; the ISMIE policy covers Dr. Paul's professional activity in Indiana as well as other states; the Rockwood insurance policy only covers Dr. Paul's activity in Indiana; the ISMIE policy contains an excess other insurance clause; and The Rockwood policy contains a pro rata other insurance clause. As a matter of law, Indiana follows the pro rata rule in disputes over the effectiveness of other insurance clauses. Therefore, ISMIE is not entitled to a judgment that would give effect to its excess clause.

Rockwood is entitled to summary judgment in its favor. In addition to the facts listed in considering ISMIE's motion, the court also takes as true a relevant fact asserted by Rockwood in materials outside the pleadings and not contested by ISMIE—that 90% of Dr. Paul's practice was located in Indiana during the time relevant to this action. As the 7th Circuit has stated, "For purposes of determining whether a material issue of fact exists, uncontested allegations to which a party had an opportunity to respond are taken as true." *Flora*, 685 F.2d at 211.

■ This case presents no issue of material fact for trial. As a matter of Indiana law, Rockwood and ISMIE are both primary insurers, each liable for a prorated amount of any settlement, cost of defense, or loss up to the limits of each policy. Rockwood Insurance Company will be liable for two-sevenths of any loss. ISMIE will be liable for five-sevenths.[3] Rockwood has also requested that this court grant attorneys fees and costs in this case. However, Rockwood has not provided sufficient information upon which this court could determine the issue. Rockwood's bald request cannot be granted.

---

**3.** The proration is computed by first finding the total amount of Dr. Paul's insurance for one claim: $250,000 from the ISMIE policy plus $100,000 from the Rockwood policy equals $350,000 total insurance available for this claim. Next, each insurance limit is divided by the total insurance available, yielding the proportion of loss each insurer will bear: $250,000/$350,000 equals $5/7$ for the ISMIE policy and $100,000/350,000 equals $2/7$ for the Rockwood policy.

## CONCLUSION

ISMIE's Motion for Judgment on the Pleadings is hereby DENIED. Rockwood Insurance Company's Motion for Summary Judgment is hereby GRANTED.